Jones, J. (dissenting).
We would hold that, where an infant who has been the beneficiary of public assistance and care has a claim against a third person for personal injuries, the local Department of Social Services may assert a lien under section 104-b of the Social Services Law against the proceeds of such claim to the full extent of medical assistance furnished to the infant with respect to such injuries. In our view the right to assert and enforce this lien should not in any way depend on a showing that an identifiable portion of such proceeds was attributable to the medical and hospital expenses of the infant.*
Subdivision 1 of section 104-b provides: "1. If a recipient of public assistance and care shall have a right of action, suit, claim, counterclaim or demand against another on account of any personal injuries suffered by such recipient, then the public welfare official for the public welfare district providing such assistance and care shall have a lien for such amount as may be fixed by the public welfare official not exceeding, however, the total amount of such assistance and care furnished by such public welfare official on and after the date when such injuries were incurred.” Other subdivisions provide for an effort to discover the identity of any liability insurance carrier of the one responsible for the injuries; require service of written notice of the lien on the one responsible and the carrier prior to payment of moneys to the injured party as a prerequisite to the effectiveness of the lien; provide for filing of a copy of the lien in the county clerk’s office; cover service and filing of amended notice of lien; require service on the public welfare official of notice of intention to make payment on the personal injury claim by one having notice of the lien and permit amendment of the notice of lien thereafter; authorize enforcement of the lien by action by the public welfare official against one alleged to be liable for the injuries; continue the effectiveness of the lien until released; establish a public welfare lien docket in the office of the county clerk; *420 make the lien subordinate to an attorney’s or hospital’s lien; provide that the lien shall not adversely affect the right of a public welfare official to recover on any assignment of the proceeds of the claim; specify that the lien shall not apply so as to jeopardize any Federal contribution to benefits paid; permit the public welfare official to release a certain amount from the lien and make the lien inapplicable to a workmen’s compensation or volunteer firemen’s award.
We find nothing in the detailed and full provisions of this section to suggest, much less to prescribe, that claims of infant recipients for personal injuries are to be treated differently from similar claims of adult recipients, or in either instance that a lien may be asserted for medical assistance only if and to the extent that a portion of the proceeds of the claim has been expressly identified as attributable to medical and hospital expenses.
The courts below and now the majority in this court (as well as the infant recipients) purport to find the mandate for such difference in treatment and such attribution requirement by cross reference to the provisions of subdivision 2 of. the preexisting section 104 of the Social Services Law. We would find no such statutory interrelation.
Section 104, first enacted in 1940 (L 1940, ch 619) and sometimes referred to as the "discovery section”, was enacted to authorize local welfare officials, for the benefit of the public treasury, to recover amounts which had been paid for public assistance and care where it later came to their attention that a recipient had property of his own, whether previously concealed or later acquired. In creating this general right of recoupment, however, the Legislature saw fit to impose a specific limitation on recoveries sought from infant welfare recipients. No right of recovery would accrue in such cases unless at the time the public assistance or care was granted the infant recipient was "possessed of money and property in excess of his reasonable requirements”. (§ 104, subd 2.)
Experience under section 104 showed, however, that the proceeds of tort claims of welfare recipients for personal injuries (of increasing economic significance) too often escaped the reach of section 104 recovery actions. Accordingly in 1964 the Legislature gave welfare officials a new recovery authorization directed exclusively to the proceeds of personal injury claims by the enactment of a new section, then numbered 104- *421 a, now 104-b (L 1964, ch 382). We suggest that a perceptive reading of the supporting legislative memorandum of the Department of Social Services discloses that the new authorization was sought not as a procedural bolster to facilitate section 104 recoveries, but rather as a completely new, separate, alternative, self-standing means to effect recoveries with respect to this particular class of assets as to which section 104 had proved to be inadequate.
Obviously there is no express cross reference in section 104-b to section 104 or to any subdivision of section 104. Nor is any distinction drawn between the personal injury claims of infant and adult recipients. Sections 104 and 104-b were not components of an integrated statutory pattern and were not enacted at or near the same time. The two sections address different, though somewhat related, subjects. Section 104 describes an implied contract cause of action (without a lien) for recoupment of welfare benefits from after acquired or after discovered assets of any kind; section 104-b, under which the Social Services Departments are proceeding, creates a separate lien and cause of action with respect to claims arising out of personal injuries. The latter section stands independent and self-contained, granting a lien on a particular asset—the claim of the welfare recipient—complete with all the implementing provisions already described, including authorization of an action to enforce the lien, which of course would have been unnecessary if section 104-b were simply a facilitating arm of section 104 and not to be read discretely from it. If it were intended to make special provision with respect to the lien on personal injury claims accruing to infant welfare recipients, language was at hand and it would have been easy to do so. Without the incorporation of some such language in section 104-b, however, we find no justification for importing into it any aspect of subdivision 2 of section 104. Even superficial appeal to the plausibility of associating sections 104 and 104-b because of their numerical proximity in the Social Services Law fades when it is observed that in 1971 the Legislature interposed a new section 104-a between section 104 and what then became section 104-b. The interposed section erects a presumption that the voluntary transfer of any property within one year of the transferor’s application for public assistance or care was made for the purpose of qualifying for such assistance. This section deals with eligibility for prospective welfare benefits only; it has nothing to do with recovery *422 or recoupment with respect to assistance or care already granted.
Even if it be accepted, arguendo, that the provisions of subdivision 2 of section 104 are somehow to be imported into section 104-b where the plaintiff in the tort action is an infant, we understand that it is not proposed in the present cases exactly to apply the limitation of subdivision 2. To apply such limitation after its transfer to section 104-b would require a determination in each case that the proceeds of the particular claim for personal injuries were sufficiently large that it could be said in consequence that the infant recipient "was possessed of money and property in excess of his reasonable requirements, taking into account his maintenance, education, medical care and other factors applicable to his condition” (§ 104, subd 2, as amd by L 1968, ch 448, eff May 31, 1968). The lien would stand only after a finding of such excess. Nothing in subdivision 2 of section 104 would imply, as concluded by the majority, that funds attributed to past medical care would automatically become excess if it appeared that there were no unpaid medical expenses. What of the infant’s needs for "maintenance, education * * * and any other factors applicable to his condition,” or indeed for medical care in the future? We find no suggestion to support any such categorical compartmentation of needs and associated assets. Moreover even under such a theory might not that portion of the proceeds of a personal injury settlement attributable to conscious pain and suffering also be exposed to the imposition of the lien as in excess of future medical and personal requirements? The records before us contain no proof with respect to the reasonable requirements of these infant recipients, nor do we understand it to be the purpose or within the scope of the remittals now ordered to develop any such proof. Any application of the precise limitation which is set forth in subdivision 2 of section 104 seems somehow wholly to have been ignored.
As we understand it, the majority would make the existence of the departmental lien for medical assistance turn on whether, on examination of the terms of the settlement of the infant’s claim for personal injuries,it appeared that an identifiable portion of the total amount of the settlement was in fact earmarked as attributable to the particular medical and hospital expenses which formed the basis for the asserted departmental lien. We see no predicate for the imposition of any *423 such restriction in the language or design of section 104-b or otherwise, nor is any called to our attention.
To construct such a condition precedent not only constitutes innovative judicial legislation; its implementation will serve to emasculate section 104-b with respect to liens for medical assistance furnished infant recipients. Departmental recoupment will depend on the precise form in which the particular settlement is cast or in which the particular verdict following jury trial is returned. As a practical matter, in the future it will be necessary only to omit any specific attribution to medical and hospital expenses to thwart a departmental lien. The effective elimination of such liens will defeat the very purposes for which section 104-b was adopted. The granting of needed medical assistance will be chilled; as important, the public treasury will be denied recoveries to which the Legislature surely thought it entitled.
We further see an even more fundamental difficulty. We acknowledge that the amount of medical and hospital expenses, as well as the amount of other items of special damages, has a very real impact on the size of any settlement or verdict in an action for personal injuries. It must also be recognized, however, that the right to recover for medical and hospital expenses already incurred belongs to the parent and not to the infant. (Clarke v Eighth Ave. R. R. Co., 238 NY 246; Ann., 32 ALR2d 1060, 1069; PJI 2:318; 7A Warren’s Negligence, Damages, § 4.05, subd [3], p 325.) Thus, the third-party tort-feasor in settlement negotiation or by requested jury charge may properly insist that no part of the infant’s settlement or verdict include any amount with respect to medical and hospital expenses already incurred. The rule announced by the majority today can only be understood in its legal aspect then as precluding all departmental liens for medical assistance, unless through inadvertence or otherwise there is included in the infant’s settlement or verdict a component of damages which is not properly includible therein. The ultimate consequence, since the parent in welfare instances will not be able to prove the payment prerequisite to his right to recover, will be that the local Social Services Departments will be denied recovery, the infant will derive no benefit, and the third-party tort-feasor will enjoy a windfall. We cannot think that this result was intended by the Legislature or that the Legislature will long allow section 104-b as so construed to stand on the statute books without clarifying amendment. *424 When the benefits paid under the Aid to Families with Dependent Children program constitute so large a part of total welfare benefits, legitimate recoupment of the assistance and care furnished infant recipients takes on an added importance.
Accordingly, we would sustain the liens asserted by the local Department in these three cases, in toto.
Chief Judge Breitel and Judges Gabrielli and Fuchsberg concur with Judge Wachtler; Judge Fuchsberg concurs in result in a separate opinion; Judge Jones dissents and votes to reverse in another opinion in which Judges Jasen and Cooke concur.
In Baker v Sterling: Order affirmed, without costs. Question certified answered in the affirmative.
Chief Judge Breitel and Judges Gabrielli, Wachtler and Fuchsberg concur; Judge Fuchsberg concurs in result in a separate opinion; Judge Jones dissents and votes to reverse in another opinion in which Judges Jasen and Cooke concur.
In Griffin v Cox: Order modified, without costs, and case remitted to Supreme Court, Kings County, for further proceedings in accordance with the memorandum herein, and, as so modified, affirmed.
In Marsh v La Marco: Order affirmed, without costs, in memorandum.

 We limit our consideration and discussion to medical assistance provided for hospital and medical expenses because that is the only form of assistance for which liens are sought in these cases. Although in Baker v Sterling a lien was originally filed for general assistance as well, the Department has abandoned that claim in this court, so no issue is before us as to the Department’s right to the broader lien.